UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FREEDOM SCIENTIFIC,
INC., a Delaware corporation,

    Plaintiff,

v.                                    CASE NO. 8:14-CV-1229 -CEH-AEP

ENHANCED VISION SYSTEMS,
INC., a California corporation,

    Defendant.
_____/

**OPENING *MARKMAN* BRIEF OF DEFENDANT ENHANCED VISION SYSTEMS, INC.**

Defendant, Enhanced Vision Systems, Inc. ("Enhanced Vision"), in accordance with the Court's Case Management and Scheduling Order (Dkt. 47), hereby submits its opening brief regarding construction of claim terms in Plaintiff Freedom Scientific, Inc.'s ("Plaintiff's") Patent No. 8,264,598 ("the '598 Patent").

**I.     INTRODUCTION**

    **A.     The Claimed Invention**

The abstract for the '598 Patent states that the invention discloses "a magnifier for use by blind or low vision users." The magnifier "includes a camera … that displays enlarged images upon a screen for easy viewing." (Dkt. 1-1). The '598 Patent's specification explains further that "the present invention relates to a handheld magnification device that has a variety of discrete configurations." (Dkt. 1-1 at Col. 1, lns. 15-17).

The '598 Patent contains only seven claims. Of these seven claims, only Claims 1 and 2 are independent claims. Claims 3-7 are dependent on Claim 2 in that they are all based on a magnifier as described in Claim 2. (Dkt. 1-1 at Cols. 5-6).

### B. Nature of the Dispute

In its Amended Complaint, Plaintiff alleges that EVI's PEBBLE® HD portable electronic reader infringes Claims 2-7 of the '598 Patent. (Dkt. 45 at ¶7). Claim 1 of the '598 is also at issue due to EVI's counterclaim for a declaration that EVI does not infringe any claim of the '598 Patent. (Dkt 48 at ¶¶5-10).

## II. PRINCIPLES OF CLAIM CONSTRUCTION

Claim construction is purely a matter of law. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). It is a "bedrock principle" of patent law that "the claims of a patent define the invention …." *Innova/Pure Water, Inc., v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111-1115 (Fed. Cir. 2004); *see also Vitronics v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)("we look to the words of the claims themselves … to define the scope of the patented invention"). Because claim language defines the scope of a claim, claim construction must begin with "the language of the claims." *Johnson Worldwide Associates, Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999). "The analytical focus must begin with and remain centered on the language of the claims themselves." *Interactive Gift Express, Inc., v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001).

Courts apply a presumption that the same terms have the same meaning in different claims unless it is clear from the specification and prosecution history that the terms have different meanings. *See Pods, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1366 (Fed. Cir. 2007). To this end, the terms of a claim are generally given their ordinary and accustomed meaning. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-1313 (Fed. Cir. 2005). This meaning is the meaning that the claim term would have to a person of ordinary skill in the art in question at the

time the application was filed taking into account the context of the entire patent specification. *Phillips*, 415 F.3d at 1313.

There is a "heavy presumption" in favor of the ordinary meaning of the claim language. *See Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001). This presumption may be overcome only if: (1) a different meaning is set forth in the intrinsic materials (the claims, written description, or prosecution history) such that the patentee has chosen to be his own lexicographer; or (2) the ordinary and accustomed meaning of the claim language so deprives the claim of clarity that there is no means by which the scope of the claim may be ascertained from the language used. *Bell*, 262 F.3d at 1268. The applicant acts as his own lexicographer by "expressly defin[ing] terms used in the claims or when [by] defin[ing] terms by implication." *Bell*, 262 F.3d at 1268, citing *Vitronics*, 90 F. 3d. at 1582. "Thus, the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Bell*, 262 F.3d at 1268, citing *Vitronics*, 90 F. 3d. at 1582.

Hence, the Court should look to the specification to determine if the patentee has chosen "to be his own lexicographer." *Bell*, 262 F.3d at 1268. The specification may "assist in resolving ambiguity where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). It is improper, however, for the court to read limitations from the specification and described embodiments into the claim language. *See Teleflex*, 299 F.3d at 1326.

The Court may also look to the prosecution history, and in some cases extrinsic evidence, to construe claim terms if applicable. *See Markman*, 52 F.3d at 980. However, EVI submits

there is nothing in the prosecution history and no extrinsic evidence needed for the Court to construe the applicable claim terms.

## III.   TERMS AT ISSUE

In accordance with the Court's Order (Dkt. 47), the parties exchanged proposed claim terms for construction along with proposed constructions and lists of evidence on which each party intends to rely. The claim terms identified by one or both of the parties are as follows:

|   | CLAIM TERM | LOCATION |
|---|---|---|
| 1 | Light Guide(s) | Claim 1 at Col. 5, lns. 33, 40<br>Claim 1 at Col. 6, ln. 6<br>Claim 2 at Col. 6, lns. 20, 37<br>Claim 7 at Col. 6, ln. 49 |
| 2 | Angled Surface(s) | Claim 1 at Col. 5, ln. 39<br>Claim 7 at Col. 6, ln. 48 |
| 3 | Light Chamber | Claim 1 at Col. 5, lns. 37-38, 41<br>Claim 1 at Col. 6, ln. 7<br>Claim 2 at Col. 6, lns. 22, 37<br>Claim 6 at Col. 6, lns. 45-46<br>Claim 7 at Col. 6, lns. 47-48 |

Each of these claim terms is discussed in turn below.

### A.   "Light Guide(s)"

| Enhanced Vision's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| Ordinary meaning, but cannot be same as "angled surface(s)" | Ordinary meaning |

As stated above, the "heavy presumption" in construing claim terms is to give them their ordinary meaning. *See Bell Atlantic*, 262 F.3d at 1268. Here, both parties agree that the claim

term "light guide(s)" does not need any particular construction as the term can be understood through its ordinary meaning. The parties seem to differ, however, as to whether a "light guide" can also be an "angled surface."

The term "light guide" (or "light guides") appears in both independent Claims 1 and 2 as well as in dependent Claim 7. The term "light guide(s)" should be presumed to have the same meaning in Claims 1, 2 and 7 because there is nothing in the specification or prosecution history evidencing that the term should or could have different meanings in the different claims. *See Pods*, 484 F.3d at 1366. Nowhere in the specification is there any indication that a "light guide" claimed in Claim 1 is different in any way from a "light guide" claimed in Claim 2 or Claim 7.

It follows that a "light guide" cannot be the same as an "angled surface." In Claim 1, the angled surfaces (82) are claimed as "positioned immediately below the light guides" (68) (*see* '598 Patent at Col. 5, lns. 39-40), thus clearly showing that the angled surfaces and light guides as separate and distinct elements. This is likewise described in the specification at col. 4, lines 22-24:

> In the preferred embodiment, light chamber **78** is white and includes angled surfaces **82** that are positioned immediately below light guides **68**.

The drawings in the '598 Patent (most notably Figs. 9 and 11) also illustrate the light guides (68) as being separate and distinct from the angled surfaces (82). In fact, Fig. 11 (reduced in size and reproduced below) shows the battery door (74, mislabeled as 72) removed, with one of the light guides (68) on its face that would be in registry with a corresponding angled surface (82) within the light chamber (78) when the battery door (74) is closed.

**FIG. 11**



Even in the "PARTS LIST" in col. 2 of the '598 Patent, these elements are recited as "68 Light Guides (Handle)" and "82 Angled Surfaces (Chamber)" respectively, corresponding to the light guides (68) being in the handle, and the angled surfaces (82) being in the chamber (78), again showing the light guides and angled surfaces are different elements. This distinction is also readily apparent by inspection of Plaintiff's RUBY® HD provided to the Court.

Further, Claim 1 recites light is directed "through the light guides" ('598 Patent at Col. 5, ln. 6). If the "angled surfaces" were the same as the "light guides," Claim 1 would require the light to be directed "through the [angled surfaces]." Such a construction is not supported anywhere in the specification. In fact, the portion of the specification that describes directing light "through the light guides" ('598 Patent at Col. 5, lns. 3-7) describes the light as going *through* the light guides and *into* the light chamber (where the angled surfaces are located):

> Furthermore, in the third orientation, the LEDs **52** are brought into registry with light guides **68** in handle **24**. Thus, LEDs **52** direct light through light guides **68**, into light chamber **78**, and out through opening **72**.

6

Fig. 9 (reproduced below) shows the LEDs (52) brought into registry with the light guides (68) when the device is in the "third orientation" as described at Col. 5, lns. 3-7, so the light guides can guide the light.[1]



This too supports the construction that in Claim 1 the claimed "light guides" (within the back face of the handle) are different components than the claimed "angled surfaces" (part of the light chamber within the handle).

For all these reasons, "light guide(s)" needs no particular construction other than the fact that "light guide(s)" cannot be the same as "angled surface(s)." This definition should apply for all the claims because there is nothing in the specification or prosecution history suggesting that "light guide" in Claim 2 has a different meaning than "light guides" in Claim 1. *See Pods*, 484 F.3d at 1366.

B.  "Angled Surface(s)"

| Enhanced Vision's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| Ordinary meaning, but cannot be same as "light guide(s)" | Ordinary meaning |

As with "light guide(s)," the parties agree that "angled surface(s)" does not need any particular construction as the term can be understood through its ordinary meaning. Once again,

---

[1] This arrangement, where "an angled surface … is positioned immediately below the light guide *when in the third orientation*" is specified in Claim 7. *See* Col. 6, lns. 47-49 (emphasis added).

however, the parties seem to differ as to whether an "angled surface" can be the same as a "light guide." For the same reasons stated with respect to "light guide(s)," however, the two cannot possibly be the same. It follows that "angled surface(s)" needs no particular construction other than the fact that "angled surface(s)" must be different from "light guide(s)."

### C. "Light Chamber"

| Enhanced Vision's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| Ordinary meaning | "A fully or partially enclosed space or cavity for light" |

Plaintiff believes the term "light chamber" requires construction while Defendant Enhanced Vision does not. The term is easily understood by its ordinary meaning. Nothing in the specification indicates otherwise.

### IV. CONCLUSION

For the above reasons, Enhanced Vision requests that the claim terms at issue be construed as follows:

| Claim Term | Construction |
|---|---|
| "Light Guide(s)" | Ordinary, no particular construction needed, other than that "light guide(s)" cannot be the same as "angled surface(s)" |
| "Angled Surface(s)" | Ordinary, no particular construction needed, other than that "angled surface(s)" cannot be the same as "light guide(s)" |
| "Light Chamber" | Ordinary meaning. No particular construction needed. |

/s/ *Joseph J. Weissman*
Frank R. Jakes, FBN 372226
E-Mail:  frankj@jpfirm.com
Joseph J. Weissman, FBN 0041424
E-Mail:  josephw@jpfirm.com
JOHNSON, POPE, BOKOR,
　　RUPPEL & BURNS, LLP
403 E. Madison Street, 4th Floor
Tampa, FL  33602
Phone (813) 225-2500
Fax (813) 223-7118

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 10th day of April, 2015, a true and correct copy of the foregoing has been filed with the Clerk of the Court using the CM/ECF System, who will send an electronic notification of filing to all counsel of record.

/s/ *Joseph J. Weissman*
Frank R. Jakes, FBN 372226
E-Mail:  frankj@jpfirm.com
Joseph J. Weissman, FBN 0041424
E-Mail:  josephw@jpfirm.com
JOHNSON, POPE, BOKOR,
　　RUPPEL & BURNS, LLP
403 E. Madison Street, 4th Floor
Tampa, FL  33602
Phone (813) 225-2500
Fax (813) 223-7118

#2100846