UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FREEDOM SCIENTIFIC,
INC., a Delaware corporation,

        Plaintiff,

    v.                          CASE NO. 8:14-CV-1229 –T-36-JSS

ENHANCED VISION SYSTEMS,
INC., a California corporation,

        Defendant.

_____/

**DEFENDANT'S STATEMENT OF OBJECTIONS TO REPORT AND
RECOMMENDATION ON DEFENDANT'S MOTION FOR ATTORNEY'S FEES**

Defendant Enhanced Vision Systems, Inc. ("Enhanced Vision"), by and through

undersigned counsel, hereby files the following objections to the Magistrate Judge's "Report and

Recommendation" (the "R&R") (Dkt. 96) regarding Defendant's Motion for Attorney's Fees

(Dkt. 83).

## I.    LEGAL STANDARD

Pursuant to 28 U.S.C. §636, a party may file written objections within fourteen days after

being served with a copy of a magistrate judge's report and recommendation.  *See* 28 U.S.C.

§636(b)(1).   Once objections are filed, the district court judge must "make a *de novo*

determination of those portions of the report or specified proposed findings or recommendations

to which objection is made."  *Id*.; *see also Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512

(11th Cir.1990)(district judge must "give fresh consideration to those issues to which specific

objection has been made by a party").  "In determining whether to accept, reject, or modify the

magistrate's report and recommendations, the district court has the duty to conduct a careful and

1

complete review." *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982)(citation omitted).

## II. OBJECTIONS

### A. Summary

The R&R is objectionable principally because it overlooks and fails to analyze Enhanced Vision's main arguments. For example, Enhanced Vision asserted both in its initial brief and its reply brief that "Plaintiff's infringement position with respect to [all] the claims of the '598 Patent has always been objectively unreasonable." (Dkt. 83 at 9; Dkt. 95 at 1). Yet, the R&R contains no analysis whatsoever of Plaintiff's infringement positions, much less the specific claim language on which they are based.

Similarly, the R&R incorrectly analyzes Enhanced Vision's separate contentions regarding Claim 1. The issue is not whether Plaintiff can assert and then withdraw an allegation of infringement with respect to Claim 1. The issue is whether Plaintiff – who never performed any infringement analysis relating to Claim 1 and admitted after the fact that Claim 1 was never actually infringed – could reasonably and continually assert that Claim 1 was "clearly" infringed, thereby forcing Defendant to maintain a declaratory action for non-infringement relating to the claim.

### B. Particular Objections

1. Enhanced Vision objects to the chronology of the case presented in the first full paragraph on page 2 of the Report and Recommendation ("R&R") as incomplete in that it omits facts that show that Plaintiff's conduct with respect to Claim 1 was objectively unreasonable:

a. Plaintiff's patent counsel's opinion of infringement and supporting claims chart were limited solely to Claim 2. There is no evidence that Plaintiff ever received a legal

2

opinion that Enhanced Vision's product infringed Claim 1 or dependent Claims 3-7.  (Dkt. 95 at 2);

b.      Nevertheless, on October 1, 2014, litigation counsel for Plaintiff wrote counsel for Defendant in relevant part as follows:  "[T]he patent only contains 7 claims, all of which are clearly infringed."  (Dkt. 83 at 2);

c.      Based on this statement from Plaintiff, Defendant moved for summary judgement on all seven claims in the Patent-in-Suit on October 31, 2014;

d.      Despite withdrawing its allegation of infringement with respect to Claim 1, Plaintiff made clear to Defendant that "[i]t is still [Plaintiff's] position that [Enhanced Vision's] Pebble HD infringes [C]laim 1 of the '598 Patent. … [Plaintiff] is not willing to grant [Defendant] a covenant not to sue under [C]laim 1 … and, as I have said, [C]laim 1 is infringed in any event."  (Dkt. 83 at 4);

e.      In its November 26, 2014 motion to amend the complaint to remove allegations of infringement of Claim 1, Plaintiff asserted:  "Plaintiff maintains a good faith belief that Defendant has infringed [C]laim 1 of the '598 Patent."  Plaintiff stated further that Enhanced Vision's Pebble HD product "'clearly' infringes all claims of the '598 Patent."  (Dkt. 83 at 4);

f.      As a result of these statements, and despite the fact that Plaintiff had withdrawn its allegation of infringement of Claim 1 in this action, an actual controversy remained between the parties regarding Claim 1.  Defendant reasonably remained in fear that Plaintiff might again sue Enhanced Vision for alleged infringement of Claim 1;

g.      For this reason and this reason only, Enhanced Vision was forced to maintain and prosecute its counterclaim regarding non-infringement of Claim 1 (*see* Dkt. 48) and the Court was forced to rule on this issue;

h.     Despite its prior statements, Plaintiff conceded months later without explanation at the May 18, 2015 *Markman* claim construction hearing that Enhanced Vision's Pebble HD product did not in fact infringe Claim 1.  This concession led the Court to grant summary judgment to Enhanced Vision on Claim 1.  (Dkt. 81 at 3, 5).

2.     Enhanced Vision objects to the characterization and analysis of its two main contentions as to why this case is exceptional as stated in Section B of the R&R on page 4.

a.     The R&R misstates Enhanced Vision's first contention regarding why this case is exceptional.  Enhanced Vision does not argue that "Plaintiff's infringement position was objectively unreasonable and weak *in that* Plaintiff failed to conduct a proper pre-suit investigation of its claims and maintained a position that forced the litigation of unnecessary issues."  (R&R at 4 (emphasis added)).  To the contrary, as Enhanced Vision stated in all its filings relating to its Motion for Attorney's Fees, "Plaintiff's infringement position with respect to [all] the claims of the '598 Patent has always been objectively unreasonable." (Dkt. 83 at 9; Dkt. 92 at 1; Dkt. 95 at 1).

This distinction is crucial.  Enhanced Vision's contention of objective unreasonableness is not dependent on the nature of Plaintiff's pre-suit investigation.  Although the lack of any reasonable and meaningful pre-suit investigation by Plaintiffs bolsters Defendant's position, Plaintiff's infringement positions were objectively unreasonable regardless of any pre-suit investigation.  Similarly, Enhanced Vision's contention regarding objective unreasonableness is not dependent on whether Plaintiff forced the litigation of unnecessary issues.

The R&R's misunderstanding of Enhanced Vision's first contention renders most of the analysis in the R&R inapplicable.  The R&R omits any meaningful analysis of objective unreasonableness.  Nowhere in the R&R is there any discussion of the particular infringement

arguments made by Plaintiff with respect to any claim.  Nowhere is there any discussion of the reasonableness of any claim construction arguments put forward by Plaintiff.  In fact, the R&R fails to analyze any claim language at all other than restating the Court's summary judgment ruling.  Nowhere is there any analysis of Enhanced Vision's argument that even a cursory review of the accused device would have revealed that the handle of the accused device could have no "light guide(s)" unless the angled surface(s) within the handle of the Pebble HD were considered "light guide(s)."  Nor, is there any analysis of the point ultimately conceded by Plaintiff that the patent itself makes clear that a "light guide" cannot also constitute an "angled surface."  (*See* Dkt. 83 at 10).

Thus, the R&R lacks any analysis of the objective reasonableness of Plaintiff's infringement position with respect to Claim 2.  Similarly, the R&R's analysis of the objective reasonableness of Plaintiff's infringement position with respect of Claim 1 is incorrectly limited to whether Plaintiff could properly raise and then withdraw this infringement allegation.

b.      With respect to its second contention, Enhanced Vision does not argue that this case is exceptional simply due to "Plaintiff's motivation for filing this lawsuit."  (R&R at 4). Instead, as Enhanced Vision stated in its initial brief, its motion for leave to file a reply brief and in its reply brief:  "Plaintiff's conduct with respect to Claim 1 of the '598 Patent [and other factors] support a finding that this is an 'exceptional case.'" (Dkt. 83 at 9; Dkt. 92 at 1; Dkt. 95 at 1).

The R&R contains no analysis of the fact that Plaintiff continued to assert that Claim 1 was "clearly" infringed – both through communications to counsel for Enhanced Vision and through Court pleadings – despite lacking any factual or legal basis for this position.  The R&R contains no analysis of Plaintiff's sudden and unexplained admission at the *Markman* hearing

months later that Claim 1 was never really infringed after all.  The R&R contains no analysis of the result of this conduct, *i.e.*, that Plaintiff forced Enhanced Vision to maintain and prosecute a declaratory judgment action for non-infringement with respect to Claim 1.

3.      Enhanced Vision objects to the statement in Section B(1) of the R&R: "Defendant contends that this case is exceptional because Plaintiff failed to investigate its claim by failing to compare Defendant's product to Plaintiff's patent before initiating its lawsuit."  (R&R at 4). First, as stated above, the issue of the pre-suit investigation is secondary to Enhanced Vision's two main contentions.  Second, Enhanced Vision did not argue that Plaintiff failed to make any comparison.  Instead, Enhanced Vision argued in both its initial brief and its reply brief that "there is no indication that Plaintiff ever did so *to any meaningful or reasonable degree*."  (Dkt. 83 at 9 (emphasis added); Dkt. 95 at 2).

4.      Enhanced Vision objects to the factual assertions in Section B(1) because they fail to differentiate between Plaintiff's patent counsel's analysis of Claim 2 and analysis of Claim 1 and Claims 3-7.  As stated above, Mr. Colitz's analysis and claims chart were limited to Claim 2 only.  (*See also* Dkt. 95 at 2).  He issued no opinion with respect to Claim 1 or Claims 3-7. Thus, Plaintiff could not have analyzed Claim 1 or Claims 3-7 to any meaningful degree.

5.      Enhanced Vision further objects to the factual assertion in Section B(1) that Mr. Colitz "physically inspected [Enhanced Vision's] product."  (R&R at 5).  Mr. Colitz's affidavit is crafted to state:  "*I believe* I also visually inspected a Pebble HD product at that time."  (Dkt. 89 at ¶4 (emphasis added)).  Moreover, even if such an inspection occurred, it only resulted in an opinion with respect to Claim 2.

6.      Enhanced Vision further objects to the R&R's legal analysis of Plaintiff's pre-suit investigation in Section B(1).  (R&R at 4-6).  The analysis completely overlooks the argument

made in Enhanced Vision's reply brief that "in addition to comparing the accused device to the claims of a patent, '[a] reasonable presuit investigation … requires counsel to perform an objective evaluation of *the claim terms* when reading those terms on the accused device.' *Eon–Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1329 (Fed. Cir. 2011)(emphasis added)."  (Dkt. 95 at 3).

As the R&R contains no analysis of the claim terms, it contains no analysis of whether Mr. Colitz performed an objective evaluation of the claim terms when reading those terms on the accused device.  As stated in the reply brief, he did not.  If he had, he should have concluded that no portion of the "Light Chamber" or "angled surface" could possibly be considered a "light guide," a point conceded by Plaintiff at the *Markman* hearing.  Thus, there is no indication that Plaintiff ever compared the accused product to Claim 2 to any meaningful or reasonable degree.

7.      Enhanced Vision objects to the factual statements and legal analysis in the last paragraph of Section B(1) of the R&R regarding the fact that Plaintiff's main infringement allegation in this matter was "[u]pon information and belief."  (R&R at 6).  None of the case law cited in this section of the R&R involves a patent case.  Unlike general litigation, a Plaintiff in a patent case has an obligation to reasonably and meaningfully compare an accused product to the claims of a patent prior to initiating a lawsuit.  (*See* Dkt. 83 at 9).  Given this requirement and Mr. Colitz's admission that his patent opinion relates solely to Claim 2, the fact that Plaintiff alleged patent infringement merely "[u]pon information and belief" is surely indicative of whether Plaintiff ever conducted a proper pre-suit investigation, especially with respect to Claim 1.

8.      Enhanced Vision objects to the R&R's factual and legal analysis of whether Plaintiff's infringement position with respect to Claim 1 was objectively unreasonable.  (R&R at

6-9).  As stated above, the R&R incorrectly limits its analysis to the fact that Plaintiff advanced and then withdrew its formal allegation of infringement of Claim 1.  This is not the issue. Completely overlooked is any analysis of Plaintiff's infringement position with respect to Claim 1 or the actual claim language of Claim 1.  Because the R&R never analyzes the objective reasonableness of Plaintiff's infringement position with respect to Claim 1 (or Claim 2 for that matter), the R&R cannot reach any meaningful conclusion as to whether those positions make this an exceptional case.

The R&R further demonstrates a misunderstanding of Enhanced Vision's second contention by failing to understand that Claim 1 was still at issue despite the fact that Plaintiff withdrew it infringement allegations with respect to Claim 1.  (*See* R&R at 7 ("In light of the withdrawal of Claim 1, the only disputed issue before the Court was whether Defendant's product included a light guide as defined in Plaintiff's patent")).  Enhanced Vision was forced to maintain and prosecute its declaratory judgment action for non-infringement of Claim 1 for months due to Plaintiff's unsupported and repeated assertions that Enhanced Vision's accused product "clearly" infringed Claim 1.  Only when push came to shove at the claim construction hearing did Plaintiff suddenly and without explanation admit that Enhanced Vision's accused product did not in fact infringe Claim 1.  By that time, Defendant had already devoted the time and resources needed to combat Plaintiff's barren accusations relating to that claim.

9.      Finally, Enhanced Vision objects to the factual and legal conclusions in Section B(3).  (R&R at 9).  Enhanced Vision does not argue "that this case is exceptional because Plaintiff's motivation for bringing this lawsuit was to burden Defendant."  (R&R at 9).  Instead, Enhanced Vision argues that Plaintiff's motivation is a factor to be considered – along with all the other factors advanced by Defendant – in finding this an exceptional case.

Plaintiff filed this lawsuit without any warning to Enhanced Vision.  The United States Patent and Trademark Office had agreed to a second re-examination of the patent at issue in the first lawsuit after previously finding the patent invalid due to prior art.  At the time Plaintiff served this lawsuit on Enhanced Vision, the Court had granted Enhanced Vision's motion to stay the first lawsuit based on the second-reexamination.

The nature of Plaintiff's pre-suit investigation, the timing of the service of the lawsuit and the boilerplate nature of Plaintiff's complaint all support the conclusion that Plaintiff's lawsuit was motivated by an interest to continue burdening Enhanced Vision, a competitor, with patent litigation based on patents of questionable validity and/or applicability.  *See Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329, 336 (S.D.N.Y. 2014)(such facts supported a finding of an exceptional case).  (Dkt. 83 at 15).  This is even more true as Plaintiff's infringement position with respect to all of the claims of the '598 Patent has always been objectively unreasonable.

## III.     CONCLUSION

For the reasons stated above and in Enhanced Vision's prior briefs, Enhanced Vision requests that the Court reject the factual and legal conclusions of the Magistrate Judge and find this an exceptional case in which Enhanced Vision is entitled to its reasonable attorney's fees.

<div style="margin-left:40%">

/s/ *Joseph J. Weissman*
Joseph J. Weissman, FBN 0041424
E-Mail:  josephw@jpfirm.com
JOHNSON, POPE, BOKOR,
     RUPPEL & BURNS, LLP
403 E. Madison Street, 4th Floor
Tampa, FL  33602
Phone (813) 225-2500
Fax (813) 223-7118

</div>

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 10th day of February, 2016, I served by email a true and correct copy of the foregoing on Michael J. Colitz, III and Kristin L. Shusko, GrayRobinson PA, Suite 2200, 201 North Franklin Street, Tampa, Florida 33602 and Kevin P. Crosby, GrayRobinson PA, 401 E Las Olas Blvd Ste. 1000, Ft Lauderdale, FL 33301

/s/ *Joseph J. Weissman*

Joseph J. Weissman, FBN 0041424
E-Mail:  josephw@jpfirm.com
JOHNSON, POPE, BOKOR,
    RUPPEL & BURNS, LLP
403 E. Madison Street, 4th Floor
Tampa, FL  33602
Phone (813) 225-2500
Fax (813) 223-7118

#3390053